UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

N.G. PURVIS FARMS, INCORPORATED;
PURVIS FAMILY FARMS, LLC,
           *Plaintiffs-Appellants,*

v.

A. PRESTON HOWARD, JR., Director
of the N. C. Department of
Environment & Natural Resources,
Division of Water Quality, in his
individual & official capacities;
KERR STEVENS, Director of the
Department of Environment &
Natural Resources, Division of
Water Quality, in his official
capacity; NORTH CAROLINA
DEPARTMENT OF ENVIRONMENT,
HEALTH AND NATURAL RESOURCES,
           *Defendants-Appellees.*

No. 01-2268

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-00-235-5-BR)

Argued: May 8, 2002

Decided: June 18, 2002

Before NIEMEYER and MOTZ, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** R. Sarah Compton, HARRIS & WINFIELD, L.L.P., Raleigh, North Carolina, for Appellants. David Roy Blackwell, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Donald J. Harris, Margaret Winfield Harris, HARRIS & WINFIELD, L.L.P., Raleigh, North Carolina, for Appellants. Roy Cooper, North Carolina Attorney General, Jill B. Hickey, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Purvis Family Farms, LLC and N.G. Purvis Farms, Inc. (collectively, "Purvis") brought this suit against A. Preston Howard, Jr., former director of the North Carolina Department of Environment and Natural Resources' ("DENR") Division of Water Quality ("DWQ"); DWQ's current director, Kerr (Tommy) Stevens; and DENR. Purvis asserts that the defendants are responsible for wastewater permitting decisions that denied Purvis equal protection and deprived it of property without due process of law. The district court granted the defendants summary judgment. We affirm.

I.

Purvis Family Farms, LLC is a hog farming business located in Robbins, North Carolina. In 1996 it formed N.G. Purvis Farms, LLC

to own and operate a new facility in Moore County, "Fairway Farm # 1," where hogs would be raised from farrow to weaning. Purvis expected to keep a population of about 5,200 sows and their young in the facility at any given time. Eventually, Purvis hoped to open three more facilities at the Fairway site.

North Carolina law required Purvis to build and operate a waste management system for the facility, and to obtain a water quality non-discharge permit for the system from DWQ. In 1996, an animal operator such as Purvis could satisfy the permit requirement in either of two ways. First, an operator could apply for an individual permit by submitting a detailed application for DWQ's approval before beginning construction. Alternatively, an operator could proceed through the "deemed permitted" process by (1) developing an animal waste management plan meeting certain state and federal standards; (2) having the plan certified by a technical specialist, and submitted to DWQ; (3) building the animal waste system described in the plan; and (4) after construction, obtaining an "on-site inspection to confirm that animal waste storage and treatment structures . . . have been designed and constructed to meet the appropriate minimum standards and specifications." N.C. Admin. Code tit. 15A r. 2H.0217(a)(1)(H)(i)-(v) (Dec. 1996). If the operator successfully completed each step, it would be "deemed permitted."*

An operator's eligibility to use the deemed permitted process, and its retention of deemed permitted status once achieved, were subject to review at any time. Specifically, the North Carolina Administrative Code provided that the Director of Water Quality could,

> on a case by case basis[,] determine that a facility should not be deemed to be permitted in accordance with this Rule and be required to obtain individual nondischarge permits. This determination will be made based on existing or projected environmental impacts.

---

*An amendment to the statute authorizing these regulations terminated the "deemed permitted" procedure, effective January 1, 1997. *See* N.C. Gen. Stat. § 143-215.10C(a) (2002). The parties agree that Purvis submitted the application at issue in this case before the deadline.

N.C. Admin. Code tit. 15A r. 2H.0217(b) (Dec. 1996).

Purvis decided to build Fairway #1 under the deemed permitted process, and forwarded a waste management plan and expert certification to DWQ on December 30, 1996. Purvis then began to prepare the site, purchase equipment, and begin construction. Purvis also entered into a contract for the sale of animals to be raised at the farm.

On March 13, 1997, however, Howard notified Purvis by letter that although Purvis had satisfied the design requirements, Howard had,

> [i]n accordance with 15A NCAC 2H.0217(b), . . . determined that this facility should not be covered by the deemed permitted process, due to the projected environmental impacts, and that construction should not continue. If you wish to secure permit coverage from the Division for the facility, you must first apply for and obtain an individual non-discharge permit. Please be advised that I intend to consider your past operating record at the other animal waste operations as a part of my review of your individual permit application pursuant to G.S. 132-215.1(b)(1)b.
>
> . . .
>
> [In sum], Purvis Family Farms, LLC is not authorized to construct the 5200 animal facility as the Fairway Farm #1 site until an individual permit is issued. If you proceed with construction prior to issuance of an individual permit, the Division of Water Quality will pursue appropriate enforcement remedies, including injunctive relief, to assure compliance with the environmental laws of this State.

On April 2, 1997, Purvis met with Howard to discuss the Fairway Farm, and shortly thereafter Purvis furnished Howard with a copy of its compliance record for review. After reviewing the record, Howard sent Purvis a letter dated July 24, 1997, which stated, in pertinent part:

> I have determined that your company has not substantially complied with waste management practices as required by

state laws, regulations, and rules for the protection of the environment. In view of Purvis Family Farms, LLC's compliance history, I would deny issuance of a permit for any animal waste management system for the subject site. This decision also applies to any new farm proposed by Purvis Family Farms, LLC. I recognize that a formal application is not currently under review by the Division for the Fairway Farm site, however, it is my desire to save both you and the state valuable expense associated with the preparation and review of such an application.

. . .

If this explanation of my intentions to deny a permit for the Fairway Farms Site is unacceptable, you have the right to request an adjudicatory hearing upon written request within thirty (30) days following receipt of this letter. This request must be in the form of a written petition, conforming to Chapter 150B of the North Carolina General Statutes, and filed with the Office of Administrative Hearings . . . . Unless such demands are made this decision shall be final and binding.

On August 22, 1997, Purvis filed a petition with the Office of Administrative Hearings (OAH), contesting DWQ's "refusal to issue . . . a nondischarge permit" and DWQ's "finding of substantial non-compliance . . . which will prejudice [Purvis] in future permitting efforts." While the petition was pending, Purvis attempted to purchase an operating farm with an animal waste permit. Howard learned of the negotiations, and in a letter dated April 7, 1998, informed Purvis that he would not issue a permit to any existing animal waste management system purchased or acquired by Purvis. On or about April 27, 1998, Purvis filed a second petition with the OAH challenging this decision.

On July 14, 1998, however, Purvis moved to withdraw its appeals, and an ALJ granted the motion. Purvis was never able to complete construction of the Fairway #1 site, and sold the property in May 1999.

On March 13, 2000, Purvis filed suit in Wake County Superior Court, alleging due process and equal protection claims against How-

ard under both the federal and state constitutions; Purvis also asserted that DENR and Stevens were liable under the state constitution for Howard's actions. The defendants removed the suit to federal court, and on March 16, 2001, Purvis and the defendants filed cross-motions for summary judgment. After hearing argument, the district court granted summary judgment to the defendants. Purvis appeals, and we affirm for substantially the reasons on which the district court relied.

## II.

## A.

Purvis argues, first, that it was denied equal protection of the laws. Because Purvis does not assert that any inherently suspect classification or fundamental right is at issue, Purvis must prove that it was treated differently than other similarly situated companies, and that this unequal treatment was both intended and not rationally related to a legitimate governmental interest. *See Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 436 (4th Cir. 2002) (federal standard); *S.S. Kresge Co. v. Davis*, 178 S.E.2d 382, 386 (N.C. 1971) (stating that N.C. Const. art. I. § 19 incorporates federal equal protection principles).

Purvis cannot meet this standard. The undisputed record evidence demonstrates that Purvis was the *only* company that sought permission to expand or open a new facility after pleading guilty to a criminal violation of North Carolina water quality law. Specifically, Purvis falsified a facility application in 1995 in an attempt to fraudulently obtain a permit for one of its hog farms. Plainly, Howard could rationally decide to prevent such a company from expanding.

On appeal, Purvis contends that another company (Brown's of Carolina) was allowed to expand though it too had a history of criminal violations. At oral argument, Purvis contended (through counsel) that portions of the record evidenced this but mistakenly were not included in the joint appendix. We have carefully examined the entire record. In fact, the record contains *no* evidence that Howard issued any permits to Brown's for new or expanded operations. It appears that Howard did allow Brown's to renew several permits on *existing* facilities; but Howard also allowed Purvis to renew several of its per-

mits on existing facilities. Neither company was allowed to expand. Hence, Purvis' equal protection claim fails.

### B.

Purvis next asserts that the state deprived it of a constitutionally protected property or liberty interest without adequate procedural due process. Specifically, Purvis contends that both the state and federal constitutions required the state to afford notice and an opportunity to respond before removing it from the deemed permitted process. Even assuming that a protected property or liberty interest was at stake in this decision, however, North Carolina clearly afforded the company constitutionally adequate procedure.

The essence of due process is notice and the opportunity to be heard. *See, e.g.*, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Because the appropriate level of constitutional protection depends on context, "there are situations where some form of pre-deprivation hearing is required and others where a pre-deprivation hearing is unnecessary." *McClelland v. Massinga*, 786 F.2d 1205, 1211 (4th Cir. 1986). To determine the "specific dictates of due process" in a given situation, we must consider three factors:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

In this case, the post-deprivation process that the state provided was plainly adequate. Howard informed Purvis of his decision and reasons in writing, and then met with Purvis' representatives to discuss the case. He personally reviewed the company's file. When Purvis was dissatisfied with Howard's decision, state law afforded the company a right to appeal to the state Office of Administrative Hear-

ings — a right that Purvis, in fact, exercised. Additional process, in the form of prior notice, would not have significantly reduced the likelihood of error, but would have significantly impeded the state's interest in preventing the construction of hog farms likely to pollute. Accordingly, even assuming that Purvis had some limited interest in proceeding through the deemed permitted process, the process afforded by the state adequately protected that right.

## C.

Finally, Purvis asserts that Howard's actions deprived it of substantive due process. To succeed on this claim, Purvis must demonstrate (1) that it had a property interest; (2) that the state deprived it of this interest; and (3) "that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Sylvia Development Corp. v. Calvert County, Maryland*, 48 F.3d 810, 827 (4th Cir. 1995) (citation omitted, emphasis in original). *See also Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995) ("Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement them.").

As the district court noted, Howard's actions of "1) removing Purvis from the 'deemed permitted' process; and 2) issuing a preliminary permit denial, all in light of Purvis' past failure to comply with environmental regulations, do not approach 'egregious' or 'outrageous' conduct that 'shocks the conscience.'" *Purvis Farms, Inc. v. Howard*, No. 00-CV-235, slip op. at 12-13 (E.D.N.C. Sept. 4, 2001) (quoting *Hawkins v. Freeman*, 195 F.3d 732, 728 (4th Cir. 1999)). Thus, this claim also fails.

## III.

Accordingly, the district court's judgment is

*AFFIRMED.*